IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE STINER, | CASE NO. 1:24-cv-0146 |
| Plaintiff, | DISTRICT JUDGE<br>BRIDGET MEEHAN BRENNAN |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | MAGISTRATE JUDGE<br>JAMES E. GRIMES JR. |
| Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff Christine Stiner filed a complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying disability insurance benefits and supplemental security income. Doc. 1. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural Background**

In February 2021, Stiner filed an application for disability insurance benefits, alleging a disability onset date in November 2020.[1] Tr. 84. In March 2021, Stiner filed an application for social security income, also alleging a disability onset date in November 2020. Tr. 76. In her application, Stiner alleged disability relating to shortness of breath, heart palpitations, blood pressure, gastroesophageal reflux disease, edema, pink eye, and diabetes. Tr. 76, 84. The Commissioner denied Stiner's application initially and on reconsideration. Tr. 92–95.

In February 2022, Stiner requested a hearing. Tr. 135. Administrative Law Judge ("ALJ") Peter Beekman held a telephonic hearing in January 2023. Tr. 43. Stiner appeared, testified, and was represented by counsel at the hearing. *Id.* Qualified vocational expert Robert Breslin also testified. Tr. 66. In March 2023, the ALJ issued a written decision, which found that Stiner was not entitled to benefits. Tr. 16.

In April 2023, Stiner appealed the ALJ's decision to the Appeals Counsel. Tr. 234. In December 2023, the Appeals Counsel denied Stiner's appeal, Tr. 1, making the ALJ's March 2023 decision the final decision of the Commissioner. Tr. 16–42; *see* 20 C.F.R. § 404.981.

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

**Evidence**[2]

1.   *Personal and Vocational Evidence*

Stiner was born in 1963 making her approximately 57 years of age at the alleged onset date. Tr. 84. She obtained a GED. Tr. 270.

2.   *Medical Evidence*

In December 2020, Stiner contracted COVID-19. Tr. 396. In January 2021, David M. Rosenberg, M.D., diagnosed dyspnea[3] and "post Covid syndrome." Tr. 609. Dr. Rosenberg noted that Stiner had persistent coughing, fatigue, diarrhea, recent onset of diabetes, and some brain fog. Tr. 609. He also recorded that Stiner complained of shortness of breath with talking or exertion, but that "recent cardiac evaluation revealed no specific concerns." Tr. 609.

In May 2021, Eric J. Shapiro, M.D., treated Stiner for complaints of cramping and fecal urgency, often after eating. Tr. 513–514. Dr. Shapiro noted that Stiner claimed "everything [was] worse since COVID-19" and advised that Stiner "keep working on the diet," eat "more vegetables, less of everything else," and schedule a colonoscopy. Tr. 514.

---

[2]   The recitation of medical evidence and testimony is not intended to be exhaustive and is generally limited to the evidence that was cited in the parties' briefs.

[3]   Dyspnea is the medical term for breathlessness, shortness of breath, or difficult or labored respiration. Dorland's Illustrated Medical Dictionary 576 (33rd Ed. 2020). Dyspnea on exertion happens when dyspnea is provoked by physical effort or exertion. *Id.*

3

In July 2021, Dorothy Bradford, M.D., examined Stiner based on a referral for a disability evaluation. Tr. 525–535. Dr. Bradford noted that Stiner had COVID-19 in December 2020, and "did not require admission or home oxygen." Tr. 533. She also opined that Stiner was likely deconditioned due to prolonged inactivity during the COVID-19 pandemic. Tr. 534. Dr. Bradford diagnosed the following conditions: hypertension, non-insulin dependent diabetes mellitus, morbid obesity, and trigeminal neuralgia. Tr. 534. Dr. Bradford assessed that Stiner had no activity restrictions. Tr. 534.

In August 2021, a colonoscopy showed chronic active inflammation in the cecum, which "given the short duration of symptoms," was attributed "most likely" to acute self-limiting colitis. Tr. 711. Stiner was advised to return to normal activities the day after her colonoscopy, to resume her previous diet, and to continue medications. Tr. 716.

In June 2022, Melinda Lawrence, M.D., noted Plaintiff's history of back and left-side radicular symptoms[4] with pain that correlated to an L4 nerve distribution. Tr. 810. Also in June 2022, Stiner underwent an echocardiogram, which showed normal left ventricular function but mild aortic valve regurgitation. *See* Tr. 764–765. A physical examination in June 2022 was also

---

[4] Radiculopathy happens when the root of a nerve is compressed or irritated. *Radiculopathy*, Cleveland Clinic Health Library, https://my.clevelandclinic.org/health/diseases/22564-radiculopathy [https://perma.cc/S8UE-8FYT]. Radiculopathy can cause pain, numbness, or tingling in the area around the nerve. *Id.*

4

unremarkable and showed no increased effort in Stiner's breathing or other signs of respiratory distress. Tr. 774. In June and August 2022, Stiner also discussed and received epidural steroid injections with Dr. Lawerence. Tr. 810–814.

In September 2022, Jordan McQuilkin, M.D., treated Stiner based on complaints of pain her lower chest and back, which kept her from taking a deep breath. Tr. 815. Dr. McQuilkin noted that Stiner experienced chest pain, shortness of breath, and a cough but did not have palpitations or any abdominal pain. Tr. 815. He observed that Stiner had a tachycardic[5] heart rate and significant shortness of breath with stable blood pressure. Tr. 816. Dr. McQuilkin listed potential differential[6] diagnoses including pulmonary embolism, pneumonia, congestive heart failure, and viral syndrome, andCOVID-19. Tr 816. Stiner was ultimately "admitted in stable condition" and diagnosed with shortness of breath, pulmonary embolus, and tachycardia. Tr. 817.

---

[5] Tachycardia, or a tachycardic heart rate, describes a heart rate above 100 beats per minute. Tachycardia may be caused by anything from ordinary exercise or stress to a more serious health condition. *Tachycardia*, Mayo Clinic, Diseases & Conditions, https://www.mayoclinic.org/diseases-conditions/tachycardia/symptoms-causes/syc-20355127 **[https://perma.cc/RT25-WCVK].**

[6] Differential diagnoses are list of possible conditions that all share the symptoms described to a provider. This is not a final diagnosis but of the process that a healthcare provider uses to reach a final diagnosis. *Differential Diagnosis*, Cleveland Clinic Health Library, https://my.clevelandclinic.org/health/diagnostics/22327-differential-diagnosis **[https://perma.cc/6GHM-AU2F].**

5

In October 2022, Dr. Rosenberg noted that Stiner showed no increased effort when breathing or other signs of respiratory distress. Tr. 680. He also remarked that Stiner was participating in aquatic therapy. Tr. 675. In November 2022, Dr. Rosenberg reported that Stiner had normal blood pressure, no increased effort when breathing, and no edema. Tr. 673. He further concluded she was "doing well from a pulmonary perspective." Tr. 667.

3.  *State Agency Consultants*

On initial review, state agency medical consultant Dr. Michael Lehv found that Stiner had the residual functional capacity ("RFC")[7] to perform light exertion work but that she was limited to frequently using her "right lower extremity"—also commonly referred to as her "right foot"—for foot controls but never climbing ladders, ropes, or scaffolds; frequently climbing ramps and stairs; and occasionally stooping, kneeling, crouching, and crawling. Tr. 80–81, 88–90. He also found that Stiner could have frequent exposure to extreme temperatures, humidity, and fumes but must avoid all exposure to hazards such as machinery and heights. *Id.* Dr. Lehv further remarked that the consultative examiner "opined for no activity restrictions but light RFC resolves uncertainties in [claimant's] favor." Tr. 82, 90. On reconsideration,

---

[7] An RFC is an "assessment of" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Circ. 2002). Essentially, it is the Social Security Administration's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

state agency consultant Dr. W. Scott Bolz affirmed the initial findings. Tr. 96–109.

    4.    *Hearing Testimony*

Stiner, represented by counsel, testified at the January 2023 hearing before the ALJ. Tr. 43. Stiner explained that her disability onset date was in November 2020 because she contracted COVID-19 around that time and hadn't "been able to get myself together since. It's kind of gotten worse." Tr. 47. She testified that she was unable to climb a flight of stairs and that she continued have problems dressing, cooking, and washing dishes. Tr. 47. She described that she used a nebulizer four times per day, she wore adult diapers due to diarrhea, and that, due to her shortness of breath, she never went to the store or to a doctor's appointment without someone else accompanying her. Tr. 48–49. Stiner also testified that she was unable to stand for more than about fifteen to twenty minutes and that she was no longer able to drive. T 49. Stiner explained that her doctors did not know her gastrointestinal symptoms' exact cause. Tr. 49. In relation to her shortness of breath, Stiner stated that she had not passed out and was not on supplemental oxygen, but she felt better when someone was with her. Tr. 50. She further described that she had blood clots in 2022 and that she was taking blood thinners. Tr. 50.

Stiner also testified that she used a cane based on a prescription from Dr. Lawrence. Tr. 51. Stiner stated that she did not do well with stairs and had difficulty sleeping, but that she did not have side effects from her medications.

7

Tr. 59–60. Stiner further described that she did not generally lift anything, but she could lift something like a gallon of milk, and that she could stand for about 20 to 30 minutes before she needed to sit. Tr. 61. She also discussed that she no longer engaged in certain social activities, such as singing in her church choir. Tr. 62

### 5. *Vocational Expert*

Qualified vocational expert, Robert Breslin, classified Stiner's past work as an appointment clerk performed as a sedentary semi-skilled position. Tr. 66. Breslin testified that a hypothetical individual described by the ALJ could perform Stiner's past work and could also perform other jobs including cashier II, deli cutter/slicer, and production assembler, all of which existed in significant numbers in the economy. Tr. 67–68. But Breslin further testified that, if he were to assume the hypothetical individual needed two to four restroom breaks ranging from five to ten minutes in addition to normal fifteen-minute breaks and lunch, that individual would not be able to maintain employment. Tr. 69.

### 6. *Stiner's Function Report*

Stiner completed a Functional Report on March 7, 2021. Tr 294–301. She reported that she is unable to hold a lengthy conversation without shortness of breath and that she is unable to walk more than twenty feet without her heart rate increasing and experiencing an exacerbation of her difficulty breathing. Tr 294. Stiner explained that her shortness of breath

8

caused her to take longer to complete activities, but did not otherwise prevent her from doing them. Tr. 295. She stated she could prepare meals, do laundry, and clean, Tr. 296, as well as do her own shopping and take her parents to doctor's appointments, Tr. 297–298.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2026.

2. The claimant has not engaged in substantial gainful activity since November 20, 2020, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: essential hypertension, valvular heart disease, cardiac dysrhythmia, respiratory disorder (obstructive sleep apnea and dyspnea related to hypertension), diabetes mellitus, and obesity. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: She can frequently use foot pedals with the right lower extremity; never climb ladders, ropes, or scaffolds; frequently

> climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl. She can have no concentrated exposure to extreme cold, extreme heat, smoke, fumes, pollutants, and dust and must never be exposed to hazards such as unprotected heights.
>
> 6. The claimant is capable of performing past relevant work as an appointment clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from November 20, 2020, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. 22–37.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

> 1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

> 2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.
>
> 3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.
>
> 4. What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.
>
> 5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

11

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id.* at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v.*

*Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

Stiner's issue presented, though captioned as one issue, consists of two related arguments: (1) that the ALJ failed to properly evaluate Stiner's subjective symptom complaints and (2) that the ALJ's RFC determination is not supported by substantial evidence. *See* Doc. 8, at 6. The Commissioner refutes all of Stiner's arguments. *See generally* Doc. 10.

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ considers medical evidence, the claimant's statements, other information provided by medical sources, and any other relevant evidence in the record. *See* Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017); 20 C.F.R. § 404.1529. Other relevant evidence includes:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). "The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence." *Hatcher v. Berryhill*,

13

No. 1:18-cv-1123, 2019 WL 1382288, at *15 (N.D. Ohio Mar. 27, 2019) (citing *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005)).

The ALJ found that Stiner's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 28. Stiner's initial argument arises out of this finding. Stiner asserts that the ALJ did not "provide an adequate explanation" as to any "genuine inconsistencies" between her statements and the medical records, *see* Doc. 8, at 7, 8. This this end, Stiner lists certain medical evidence summarized by the ALJ in his decision and highlights what she characterizes as "attempts by the ALJ to justify his rejection of Plaintiff's testimony[.]" Doc. 8, at 7–9 (citing to the ALJ's decision). Stiner's own brief, thus, demonstrates that the ALJ *did* provide an explanation of why some of Stiner's statements were inconsistent and found not as severe as alleged. While Stiner may have wanted the ALJ to go into more detail when explaining why her statements were somewhat inconsistent, that was not required. *See Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand.").

Review of the ALJ's decision further reveals that the ALJ properly considered Stiner's subjective complaints and adequately explained his consideration under governing regulations. For example, the ALJ recognized

14

the two-step analysis in which he was required to engage, Tr. 27, and proceeded to spend nearly eight pages detailing the medical record, all in the context of evaluating the "intensity, persistence, and limiting effects" of the symptoms described in Stiner's function report and hearing testimony. *See* Doc. 7, at 27–34. After describing Stiner's function report and hearing testimony, both of which contained Stiner's self-described daily activities, symptoms, treatments, and other details, the ALJ provided a summary of the treatment records and explained that "the evidence summarized above does not fully support [Stiner's] allegations." Doc. 7, at 34. The ALJ specifically compared Stiner's testimony regarding fecal urgency with the gastroenterology records and found that those records "do not contain any objective documentation of her allegations[.]" Doc. 7, at 34. Additionally, when evaluating Stiner's described shortness of breath and cardiological symptoms, the ALJ specifically cited medical records and evaluated the consistency of Stiner's described symptoms with those records. *Id.*

Despite citing heavily to the same portions of the ALJ's decision described here, Stiner argues that the ALJ failed to "offer[] examples of any genuine inconsistency between the subjective allegations and the other medical evidence in this record." Doc. 8, at 8 (citing Tr. 28–34). But the ALJ did, as Stiner's own brief demonstrates, appropriately articulate his consideration of Stiner's subjective complaints in compliance with the applicable regulations. So to the extent that Stiner asserts remand is

15

warranted based on the ALJ's failure "to comply with SSR 16-3p and 20 C.F.R. §§ 404.1529, 416.929," Doc. 8, at 10, her argument lacks merit and provides no basis for remand.

Stiner repeatedly asserts that the ALJ's analysis did not articulate any "genuine inconsistencies," but Stiner does not dispute that inconsistencies were articulated. So it is apparent that Stiner simply disagrees with the weight that the ALJ afforded these inconsistences. As such, her "genuine inconsistency" argument amounts to a dispute over the ALJ's weighing of the evidence. But the weighing of the evidence is a task left to the ALJ. *See* 20 C.F.R. § 404.1520c(a) (explaining how *the ALJ* will consider and weigh medical opinions and prior administrative medical findings); *see also Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 196 (6th Cir. 2020)) ("this court does not weigh evidence, assess credibility, or resolve conflicts in testimony—that's the ALJ's job."). The fact that Stiner can point to evidence that may support an opposite finding does not mean that the ALJ's decision was unsupported or in error. *Jones*, 336 F.3d at 477 ("we must defer to an agency's decision 'even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ.'"). In so far as Stiner disputes the ALJ's weighing of her subjective symptom complaints, this argument is likewise unavailing.

Stiner proceeds to raise two arguments in her final two paragraphs, both relating to the second facet of Stiner's argument—her belief that the ALJ's

16

RFC determination was improper. First, she argues that the ALJ's error—the alleged improper consideration of her subjective statements—was not harmless because it prejudiced her by resulting in an RFC determination not supported by substantial evidence. Doc. 8, at 10–11. Second, she asserts that, even if substantial evidence supported the ALJ's decision, the ALJ's decision must be overturned because the ALJ failed to follow applicable regulations. Doc. 8, at 11.

As to the first of Stiner's final arguments, she asserts that the ALJ omitted restrictions related to her ability to climb stairs, her need for additional bathroom breaks, and her ability to stand for no more than 15 or 20 minutes. *See* Doc. 8, at 10. As an initial issue, Stiner cites nothing to support the idea that such limitations should have been included in her RFC. *See* Doc. 8, at 10. So she's forfeited the argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (internal citations omitted). But even if the Court were to consider this argument, Stiner's allegation that the ALJ did not properly consider the evidence is meritless. The fact that the ALJ did not include all of the restrictions that Stiner believes should have been included, *see* Doc. 8, at 14, does not mean that the RFC determination was not supported by substantial evidence. *See Jones*,

17

336 F.3d at 477. Stiner cites nothing other than her opinion that ALJ omitted certain restrictions, to substantiate her argument that "the case a bar presents an RFC which is not supported by substantial evidence." Doc. 8, at 15. This argument therefore is unavailing.

Likewise, the second part of Stiner's final arguments fails. Stiner asserts that the allegedly erroneous RFC determination was not harmless error because, even if the RFC determination was supported by substantial evidence, the ALJ did not comply with applicable regulations for considering a claimant's testimony and symptom statements. Doc. 8, at 11. But, as discussed at length above, the ALJ did comply with those regulations. So, this argument is also unpersuasive and does not provide a basis for remand.

**Conclusion**

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: August 16, 2024

                                           */s/ James E. Grimes Jr.*
                                           James E. Grimes Jr.
                                           U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019).